IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK K. BERRY,

        Petitioner,               No. CIV S-05-0899 FCD EFB P

    vs.

STUART J. RYAN, et al.,

        Respondents.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges a 1999 judgment of conviction entered against him in Placer County Superior Court on charges involving the possession and possession for sale of narcotics and paraphernalia.  Petitioner was sentenced to sixty-four years to life in state prison pursuant to California's Three Strikes Law.  He seeks relief on the grounds that: (1) his trial and appellate counsel rendered ineffective assistance; (2) the trial court violated his right to due process when it admitted evidence of prior uncharged conduct; (3) the trial court violated his right to due process when it failed to appoint a "drug expert;" (4) the prosecutor committed misconduct by failing to disclose exculpatory evidence to the defense and by using knowingly false testimony; and (5) he was erroneously convicted of both a greater and a lesser included offense for the same crime.  Upon careful consideration of the record and the applicable

1

1   law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

2   **I.      Procedural and Factual Background**

3          In its unpublished memorandum and opinion affirming petitioner's judgment of

4   conviction on appeal[1], the California Court of Appeal for the Third Appellate District provided

5   the following factual summary:

> During a probation search, police officers discovered defendant
> Frank King Berry in possession of methamphetamine and drug
> paraphernalia.  An amended information charged defendant with
> possession of methamphetamine for sale (Health & Saf.Code, §
> 11378); possession of methamphetamine (Health & Saf.Code, §
> 11377, subd. (a)); possession of marijuana for sale (Health &
> Saf.Code, § 11359); maintaining a place for selling or using
> controlled substances (Health & Saf.Code, § 11366); possession of
> more than 28 .5 grams of marijuana (Health & Saf.Code, § 11357,
> subd. (c)); possession of an injection device (Health & Saf.Code, §
> 11364); and unauthorized possession of a hypodermic needle or
> syringe (Bus. & Prof.Code, § 4140).
>
> Following a jury trial, the court sentenced defendant to 64 years to
> life.  Defendant appeals, contending: (1) the court erred in
> admitting evidence of a prior conviction, (2) defendant's
> conviction for possession of more than one ounce of marijuana is
> barred as a lesser included offense, (3) the prosecution failed to
> prove defendant's prior convictions in Oregon constituted strikes
> under California law, and (4) defendant's sentence constitutes
> cruel and unusual punishment.
>
> In a previously filed opinion (*People v. Berry* (Aug. 5, 2002,
> C034405) [nonpub. opn.]), we agreed with defendant that the
> prosecution had failed to prove his prior Oregon convictions
> constituted qualifying strikes under California's "three strikes"
> law.  (Pen. Code, §§ 667, subds. (b)-(I), 1170.12.)  Subsequently,
> the Supreme Court granted review and on October 23, 2002,
> transferred the case back to us with directions to vacate our
> decision and reconsider the issue in light of *People v. Avery* (2002)
> 27 Cal.4th 49 (*Avery*).  On reconsideration, we conclude the trial
> court correctly found defendant's prior Oregon convictions qualify
> as strikes.  However, consistent with our prior decision, we shall
> conclude that, pursuant to Penal Code section 654, defendant's
> conviction for possession of 28.5 grams of marijuana should be
> stayed.  In all other respects, we shall affirm the judgment.

---

[1] Notice of Lodging Documents on January 23, 2006, Resp.'s Lodg. Doc. 7 (hereinafter Opinion), at 1-5.

**FACTUAL AND PROCEDURAL BACKGROUND**

A neighbor of Michael Jay Douglas noticed a daily stream of visitors, who stopped briefly at the Douglas residence and then drove away in their cars.  On March 2, 1999, police officers conducted a probation search of the residence.

The officers knocked on the door and heard whispering inside announcing their arrival.  The officers heard footsteps and the sound of furniture being moved inside the residence.  Following a second knock, Douglas opened the door, appearing very nervous.

The officers entered the residence and found several individuals, including defendant, inside.  During the search, officers found various containers of usable quantities of methamphetamine and approximately 125 grams of marijuana.  The officers also uncovered glass "crank" pipes, marijuana pipes, baggies, a scale, Vitablend, "pay/owe" sheets, and syringes.

As the officers searched the premises, three individuals arrived at the residence.  One of the arrivals, upon entering the house, possessed a bag containing methamphetamine residue.  She admitted purchasing the methamphetamine from defendant earlier that day and that she had returned to purchase more.  She identified defendant as "Bud."

The telephone rang many times during the search.  Six times, the callers asked for "Bud."  One of the officers involved in the search knew defendant as "Bud."  Outside the residence, officers found a backyard covered with dozens of shallow holes six to 12 inches in depth.

Defendant admitted ownership of a red box containing methamphetamine, syringes, and plastic baggies containing powdery residue.  He told police he was "just crashing" at the residence.  Officers had searched the residence within the past three months, when Douglas was the only resident.  No contraband was found during the prior search.

An amended information charged defendant with possession of methamphetamine for sale, possession of methamphetamine, possession of marijuana for sale, maintaining a place for selling or using controlled substances, possession of more than 28.5 grams of marijuana, possession of an injection device, and unauthorized possession of a hypodermic needle or syringe.  The information also alleged two prior serious felony convictions within the meaning of Penal Code section 667, subdivisions (b) through (I); three prior narcotics convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a); six prior prison terms within the meaning of Penal Code section 667.5, subdivision (b); and that defendant was statutorily ineligible for probation

1    pursuant to Penal Code section 1203, subdivision (e)(4).

2    A jury trial followed.  Defendant admitted the prior prison term
     and prior conviction allegations.  The jury found defendant guilty
3    on all counts and found true the prior felony strike allegations.

4    The trial court sentenced defendant to 64 years to life: 25 years to
     life for possession for sale of methamphetamine; a consecutive
5    term of 25 years to life for possession of methamphetamine, stayed
     pursuant to Penal Code section 654; a consecutive term of 25 years
6    to life for possession of marijuana for sale; a concurrent term of 25
     years to life for maintaining a place where drugs were sold or used;
7    concurrent terms of six months each for possession of more than
     28.5 grams of marijuana, possession of an injection device, and
8    unauthorized possession of a hypodermic needle or syringe; plus
     three consecutive three-year enhancements for prior narcotics
9    convictions (Health & Saf.Code, § 11370.2) and five consecutive
     one-year enhancements for prior prison terms (Pen.Code, § 667.5,
10   subd. (b)).  The court ordered defendant to pay a restitution fine of
     $10,000 pursuant to Penal Code section 1202.4 and a $10,000
11   restitution fine pursuant to Penal Code section 1202.45.  Defendant
     filed a timely notice of appeal.

12

13        After his conviction was affirmed by the California Court of Appeal, petitioner filed a

14   petition for review in the California Supreme Court.  Resp.'s Lodg. Doc. 8.  Therein, he claimed,

15   among other things, that the trial court violated his right to due process when it admitted

16   evidence of prior uncharged conduct and that he was erroneously convicted of a both a greater

17   and a lesser included offense for the same crime.  Id.  The petition for review was summarily

18   denied by order dated May 14, 2003.  Lodg. Doc. 9.

19        On January 2, 2004, petitioner filed a petition for writ of habeas corpus in the California

20   Court of Appeal, in which he claimed that: (1) his trial and appellate counsel rendered ineffective

21   assistance; (2) the trial court violated his right to due process when it failed to appoint a drug

22   expert; and (3) the prosecutor committed misconduct by failing to disclose exculpatory evidence

23   to the defense and by using knowingly false testimony.  Lodg. Doc. 10.  That petition was

24   summarily denied by order dated February 26, 2004.  Lodg. Doc. 11.  On March 22, 2004,

25   petitioner filed a petition for writ of habeas corpus in the California Supreme Court, raising the

26   same claims.  Lodg. Doc. 12.  That petition was summarily denied by order dated February 16,

4

1   2005.  Lodg. Doc. 13.

2          The instant federal habeas petition was filed on May 9, 2005.

3   **II.     Analysis**

4          **A.  Standards for a Writ of Habeas Corpus**

5          Federal habeas corpus relief is not available for any claim decided on the merits in state

6   court proceedings unless the state court's adjudication of the claim:

7               (1) resulted in a decision that was contrary to, or involved an
                unreasonable application of, clearly established Federal law, as
8               determined by the Supreme Court of the United States; or

9               (2) resulted in a decision that was based on an unreasonable
                determination of the facts in light of the evidence presented in the
10              State court proceeding.

11  28 U.S.C. § 2254(d).

12         Under section 2254(d)(1), a state court decision is "contrary to" clearly established

13  United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

14  set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

15  indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

16  result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

17  (2000)).

18         Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

19  court may grant the writ if the state court identifies the correct governing legal principle from the

20  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

21  case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

22  that court concludes in its independent judgment that the relevant state-court decision applied

23  clearly established federal law erroneously or incorrectly.  Rather, that application must also be

24  unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

25  enough that a federal habeas court, in its independent review of the legal question, is left with a

26  'firm conviction' that the state court was 'erroneous.'")

1    The court looks to the last reasoned state court decision as the basis for the state court

2    judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a

3    decision on the merits but provides no reasoning to support its conclusion, a federal

4    habeas court independently reviews the record to determine whether habeas corpus relief is

5    available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

6    **B. Petitioner's Claims**

7           1. **Admission of Evidence of Prior Uncharged Conduct**

8    Petitioner's co-defendant Michael Jay Douglas (Douglas) entered into a plea agreement

9    prior to trial, leaving petitioner as the sole remaining defendant. Because Douglas was no longer

10   involved in the trial, the prosecutor did not introduce evidence of Douglas' prior uncharged acts.

11   Petitioner claims that the admission into evidence at trial of his own "uncharged crimes," in the

12   absence of evidence of Douglas' prior acts, violated his rights to "due process and a

13   fundamentally fair trial." Pet. at 7-8, 101-04; Traverse at 9-11.[2] While the logic of this assertion

14   is not clear, petitioner reasons that because the jury was not presented with Douglas' prior

15   crimes, which were very similar to the current offenses, the evidence introduced at trial made it

16   appear as if only petitioner was involved in illegal activities at the Douglas residence. Pet. at 14-

17   16; Traverse at 20, 25, 41-44. Petitioner notes the prosecutor intended to introduce evidence of

18   Douglas' prior crimes if he had gone trial, and that he intended to argue petitioner and Douglas

19   were in business together to sell narcotics. Pet. at 5, 7-8. According to petitioner, after Douglas

20   entered into a plea agreement the focus shifted to petitioner and Douglas' involvement was

21   unfairly minimized. *Id.* Petitioner argues that this situation "allow[ed] the focus of all the

22   evidence in Douglas' home to be directed at petitioner." Traverse at 44.

23   Petitioner also argues that there was no evidence his prior uncharged acts were

24   sufficiently similar to the instant offense; i.e., had the same distinctive "signature," to have any

25

26        [2] Citations to the petition are to the handwritten pages attached to the printed form.

relevance at his trial.  Pet. at 3-8; Traverse at 15, 19, 25-26.  On the contrary, according to

petitioner, there were many substantial differences between his prior acts and the current

offenses.  Traverse at 19-20.

The California Court of Appeal rejected these claims.  The court reasoned as follows:

> Defendant contends the court erred in admitting evidence
> concerning a 1997 arrest for possession of methamphetamine for
> sale.  The evidence was admitted under Evidence Code section
> 1101, subdivision (b).  Defendant also argues the evidence should
> have been excluded under Evidence Code section 352.

**A. Facts**

> In August 1997 police officers searched defendant in his motel
> room.  The motel room was filled with methamphetamine smoke,
> and officers found defendant in possession of three ounces of
> packaged methamphetamine, crank pipes, a scale, packaging
> materials and a mirror.  Officers found pay/owe sheets in a vehicle
> associated with another occupant of the room, in a bag owned by
> defendant.

> Defendant admitted purchasing one-quarter pound of
> methamphetamine, selling one ounce, and possessing the
> remaining three ounces.  He also informed officers of cash and
> additional drugs buried behind the motel although a subsequent
> search failed to uncover any drugs or cash.  Several of the same
> names were listed on both 1997 and 1999 pay/owe sheets.

> Prior to trial in the present case, defendant's counsel objected to
> the introduction of evidence of defendant's 1997 prior conviction
> for possession of methamphetamine for sale.  Counsel argued the
> evidence bore no relevance to the current charges and was unduly
> prejudicial.

> The court overruled the objection, finding "[p]rimarily the
> relevance would be with regard to intent."  The court further found
> the probative value of the prior conviction outweighed any
> prejudice.  The prosecution presented the evidence of the 1997
> arrest and conviction.

**B. Law**

> Under Evidence Code section 1101, evidence of uncharged
> misconduct is inadmissible to prove the criminal disposition of a
> defendant.  However, such evidence is admissible to prove some
> relevant fact such as identity or common design, plan, or scheme.
> The admission of uncharged misconduct lies within the trial
> court's discretion.  The trial court must weigh the probative value

7

of the evidence against its prejudicial effect.  The trial court, in reviewing the admissibility of evidence of other offenses, must consider: (1) the materiality of the fact to be proved or disproved, (2) the probative value of the proffered evidence to prove or disprove the fact, and (3) the existence of any policy or rule requiring exclusion despite relevance.  (*People v. Daniels* (1991) 52 Cal.3d 815, 856, 277 Cal.Rptr. 122, 802 P.2d 906 (*Daniels*).)  We review such evidence under an abuse of discretion standard. (*People v. Memro* (1995) 11 Cal.4th 786, 864, 47 Cal.Rptr.2d 219, 905 P.2d 1305 (*Memro* ).)

The trial court admitted the evidence of the 1997 arrest to show intent.  The court noted that if evidence of defendant's prior crime shed "great light on the defendant's intent at the time he committed that offense, it may lead to a logical inference of his intent at the time he committed the charged offense . . . ."  Defendant disputes this assertion and contends "[t]here was no factual dispute whether the methamphetamine found inside the residence was possessed for sale."  However, defendant pled not guilty to the charge of possessing methamphetamine for sale, putting his intent, an element of the crime, at issue.  (*Memro, supra*, 11 Cal.4th at p. 864, 47 Cal.Rptr.2d 219, 905 P.2d 1305; *Daniels, supra*, 52 Cal.3d at pp. 857-858, 277 Cal.Rptr. 122, 802 P.2d 906.)  The court found the earlier arrest material as to defendant's intent, a determination we cannot fault.

As to the second consideration, the probative value of the evidence to prove the fact, we find the probative value very high.  Defendant's prior arrest stemmed from a search that revealed three ounces of methamphetamine, a scale, packaging materials, and crank pipes in his motel room.  Officers found pay/owe sheets in a bag belonging to defendant.  Several names listed on the 1997 sheets were identical to those found in the 1999 search.

Defendant argues the 1997 evidence was not relevant to prove he possessed for sale the methamphetamine found in the 1999 search.  However, in addition to the same customers' names on pay/owe sheets, one of the individuals arrested with defendant in the present case testified she had purchased drugs from him earlier the same day and had returned to purchase more.  The telephone rang frequently, with callers asking for "Bud," a name by which defendant was known.  In addition, defendant admitted owning a box containing drugs and packaging materials.

All this evidence, in addition to the duplicate names on the pay/owe sheets, reveals "a direct relationship between the prior offense and an element of the charged offense . . . ."  (*Daniels, supra*, 52 Cal.3d at p. 857, 277 Cal.Rptr. 122, 802 P.2d 906.)  The 1997 offense is "logically, naturally, and by reasonable inference relevant to prove" defendant's intent in the current offense.  (*Id.* at p. 856, 277 Cal.Rptr. 122, 802 P.2d 906.)

8

1

2

3

4

5

> However, strong probative value does not end the trial court's inquiry. The trial court must also weigh the probative value of the evidence against its prejudicial impact. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 404, 27 Cal.Rptr.2d 646, 867 P.2d 757 (*Ewoldt*); Evid.Code, § 352.) In *Ewoldt*, the Supreme Court noted prejudicial impact increases when other acts do not result in criminal convictions. (*Ewoldt, supra*, 7 Cal.4th at p. 405, 27 Cal.Rptr.2d 646, 867 P.2d 757.)

> Here, the other act, the 1997 search of defendant's motel room, resulted in defendant's arrest and conviction. Therefore, there could be no question in the jury's mind that the other conduct occurred. Nor was the evidence surrounding the 1997 arrest inflammatory as compared to the 1999 arrest: Both incidents were quite similar. The probative value of the 1997 evidence, as previously discussed, was high. Although defendant decries the evidence as "highly prejudicial," the trial court properly balanced the probative value of the evidence against its potential prejudicial effect. We find no abuse of discretion in the trial court's conclusion.

6

7

8

9

10

11

12

Opinion at 5-9.

13     The question of whether evidence of petitioner's prior uncharged acts was properly

14 admitted under California law is not cognizable in this federal habeas corpus proceeding. *Estelle*

15 *v. McGuire*, 502 U.S. 62, 67 (1991). The only question before this court is whether the trial

16 court committed an error that rendered the trial so arbitrary and fundamentally unfair that it

17 violated federal due process. *Id. See also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.

18 1991) ("the issue for us, always, is whether the state proceedings satisfied due process; the

19 presence or absence of a state law violation is largely beside the point"). The United States

20 Supreme Court "has never expressly held that it violates due process to admit other crimes

21 evidence for the purpose of showing conduct in conformity therewith, or that it violates due

22 process to admit other crimes evidence for other purposes without an instruction limiting the

23 jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774

24 (9th Cir. 2001), *overruled on other grounds* by *Woodford v. Garceau*, 538 U.S. 202 (2003). In

25 fact, the Supreme Court has expressly left open this question. *See Estelle v. Mcguire*, 502 U.S.

26 at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law

1   would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

2   propensity to commit a charged crime"). *See also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th

3   Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that

4   the propensity evidence introduced against the defendant did not violate his right to due

5   process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006), *cert. denied*, 549 U.S. 1287

6   (2007) (denying the petitioner's claim that the introduction of propensity evidence violated his

7   due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has

8   not been clearly established by the Supreme Court, as required by AEDPA"); *United States v.*

9   *LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Fed. R. Evid. 414, permitting admission of evidence of

10  similar crimes in child molestation cases, under which the test for balancing probative value and

11  prejudicial effect remains applicable, does not violate the due process clause).  Accordingly, the

12  state court's rejection of petitioner's claim that the trial court violated his right to due process

13  when it admitted evidence of his prior uncharged acts is not contrary to United States Supreme

14  Court precedent and may not be set aside.  28 U.S.C. § 2254(d).

15        Nor has petitioner demonstrated that the decision of the California Court of Appeal is

16  contrary to state or federal law.  Under Ninth Circuit law, the admission of "other acts" evidence

17  violates due process only if there were no permissible inferences the factfinder could have drawn

18  from the evidence.  *See McKinney v. Rees*, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is

19  "whether any inferences relevant to a fact of consequence may be drawn from each piece of the

20  evidence, or whether they lead only to impermissible inferences about the defendant's

21  character"); *Jammal*, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise

22  more than one inference, some permissible, some not; we must rely on the jury to sort them out

23  in light of the court's instructions").  *See also LeMay*, 260 F.3d at 1027 (evidence of prior similar

24  crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance,

25  or if its potential for prejudice far outweighs what little relevance it might have").  Here, the trial

26  court held a hearing on the prosecutor's pre-trial in limine motion to admit evidence of

10

1   petitioner's prior uncharged acts and concluded that petitioner's 1997 arrest was relevant to

2   prove intent.  Reporter's Transcript on Appeal (RT) at 3-18.  Although the prior conduct did not

3   involve acts that were identical to the current charges, the trial court concluded that the facts

4   were similar enough, especially when considered with the other evidence introduced at

5   petitioner's trial, to be probative on the issue of petitioner's intent.[3]  The trial court noted that

6   when a prior act is admitted solely to show intent, "a distinctive similarity between the two

7   crimes is often unnecessary for the other crime to be relevant."  *Id.* at 17.  The court also

8   exercised its discretion to deny the prosecutor's request to admit evidence of two other prior

9   uncharged acts, finding the circumstances too dissimilar to be relevant to the current charges.  *Id.*

10  at 17-18.  This demonstrates that the judge was cognizant of his duty to weigh the appropriate

11  factors and come to a conclusion based on the circumstances of each case.

12          Further, the jury instructions did not compel the jury to draw an inference of propensity.

13  The jury was specifically informed that other crimes evidence could be considered only for the

14  limited purpose of showing the existence of intent, identity, motive, or knowledge, and could not

15  be considered for any other purpose.  *Id.* at 400-401.  The jury was further instructed that other

16  crimes evidence "may not be considered by you to prove that defendant is a person of bad

17  character or that he has a disposition to commit crimes."  *Id.* at 400.  In addition, the jury

18  instructions as a whole correctly informed petitioner's jury that the prosecution had the burden of

19  proving petitioner guilty beyond a reasonable doubt.  *Id.* at 404.  The jury is presumed to have

20  followed these instructions.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*,

21  503 F.3d 1006, 1018 (9th Cir. 2007).  Under these circumstances, any error in admitting

22  evidence of petitioner's 1997 arrest did not have "a substantial and injurious effect or influence

23

24          [3]  *See People v. Ewoldt*, 7 Cal.4th 380, 393 (Cal. 1994) ("In the present case, evidence of
     defendant's prior misconduct is relevant to prove a material fact other than defendant's criminal
25   disposition, because the similarity between the circumstances of the prior acts and the charged
     offenses supports the inference that defendant committed the charged offenses pursuant to the
26   same design or plan defendant used to commit the uncharged misconduct").

1   in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See also*

2   *Penry v. Johnson*, 532 U.S. 782, 793-96 (2001).

3          Petitioner's claim that the admission into evidence of his prior uncharged acts was

4   unduly prejudicial because Douglas' prior uncharged acts were not admitted into evidence as

5   well is also unavailing. Petitioner has provided no evidence either party requested that evidence

6   of Douglas' prior acts be introduced into evidence after Douglas pled guilty and was removed

7   from the trial. The prosecution was not required to introduce evidence simply for the purpose of

8   helping the defense case, nor was the trial court obliged to ensure that this evidence was

9   introduced in the absence of any request. In any event, petitioner's claim that evidence of

10  Douglas' prior acts would have had a substantial impact on his own conviction is too speculative

11  to constitute prejudice. Petitioner's conviction properly rested on evidence of his own actions.

12          In sum, the admission into evidence at petitioner's trial of his 1997 arrest did not violate

13  any right clearly established by United States Supreme Court precedent or result in prejudice

14  under the circumstances of this case. Accordingly, petitioner is not entitled to relief on this

15  claim.

16          **2.   Trial Court's Failure to Appoint a Drug Expert**

17          Petitioner claims that the trial court violated his rights pursuant to *Ake v. Oklahoma*, 470

18  U.S. 68 (1984) when it failed to "consider or appoint a recognized drug-expert, one that is expert

19  in Modus Operandi detection." Pet. at 109. In the traverse, petitioner clarifies that he is actually

20  claiming his trial counsel rendered ineffective assistance in "not requesting an expert in

21  detection, and analysis of narcotics, and drug "'Modus Operandi.'" Traverse at 17-18. He

22  alleges that a drug expert would have been able to explain that petitioner's 1997 conviction

23  should not have been admitted into evidence at his trial because the modus operandi of that

24  conviction was distinct from the modus operandi of the current charges. *Id.* at 18. Specifically,

25  he notes that the 1997 conviction involved pager records, a listing of phone numbers, an

26  expensive electronic digital scale, three individual ounces of rock methamphetamine, and the

receipt of money; whereas the current charges involved no pager records, no listing of phone numbers, a "cheap plastic coffin scale," narcotics "in a bunch of mis-weighed tiny bags of probably powder, not rock," and no money at the scene of the arrest.  *Id.* at 19-20, 21; Pet. at 15-16.  Petitioner adds that his trial counsel should have also obtained a handwriting expert and a fingerprint expert to testify that the "pay-owe sheets" found in the Douglas residence did not belong to him.  Traverse at 18-19.

This claim was presented to the state courts in petitioner's applications for a writ of habeas corpus filed in the California Court of Appeal and California Supreme Court.  Both of these petitions were summarily denied.  Accordingly, this court will independently review the record to determine whether habeas corpus relief is available under section 2254(d).  *Delgado*, 223 F.3d at 982.

In *Ake*, the United States Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense."  470 U.S. at 83.  *See also Jones v. Ryan*, 583 F.3d 626, 638 (9th Cir. 2009).  There is no evidence here that petitioner's sanity was an issue at his trial.  Accordingly, the state courts' decision rejecting petitioner's claim in this regard is not contrary to or an unreasonable application of *Ake*.  In light of petitioner's statements contained in the traverse, the court will analyze this claim further in connection with petitioner's claim of ineffective assistance of trial counsel, discussed below.

### 3.  Prosecutorial Misconduct

#### a.  Failure to Disclose Exculpatory Evidence to the Defense

Petitioner argues that the prosecutor committed misconduct by failing to disclose exculpatory material to the defense.  Specifically, petitioner points to the testimony of several police officers to the effect that they received several telephone calls while they were at the

1   Douglas residence from people asking for "Bud" and stating they needed to pick up something.

2   Pet. at 165-67; RT at 18-19, 95-96.[4]  Petitioner contends that the purpose of this testimony was

3   to show that each caller to the Douglas residence "was a different caller wanting to get

4   something – the inference being drugs and that petitioner lived at Douglas and had constructive

5   poss-for-sale of the narcotics found at 1401 Crestmont."  Pet. at 166.  Petitioner states that he

6   "never received any calls at Douglas's house."  *Id.*  He also states that there is no mention of

7   these telephone calls in the police reports, contrary to the assertion of the prosecutor during pre-

8   trial motions in limine that several police reports contained reference to the calls.  Pet. at 165-66;

9   RT at 21-22.  Petitioner also complains that the prosecutor suppressed the telephone records of

10  William Marquette, who testified that he, his son, and a neighbor called the Douglas residence

11  several times during the course of petitioner's arrest, asking for Bud and attempting to locate

12  Marquette's wife.  Pet. at 166; RT at 331-32.  Petitioner argues that Marquette's telephone

13  records "conflict with" the testimony of the arresting police officers because they establish that

14  at least four of the calls were from Marquette, his son, or his neighbor, and not from people

15  wanting to buy drugs from petitioner.

16       Petitioner's claim appears to be that the prosecutor improperly failed to turn over

17  discovery describing in detail the nature of the telephone calls made to the Douglas residence

18  during his arrest, because those records would have shown that most, if not all, of those calls

19  were from Mr. Marquette, his son, or his neighbor, and not from miscellaneous drug buyers, as

20  argued by the prosecutor at petitioner's trial.  Pet. at 135.  Petitioner may also be arguing that the

21  prosecutor falsely told the trial court that the police reports mentioned incoming calls during

22  petitioner's arrest, when in fact the reports made no mention of the calls.

23  ////

24  ////

25

26       [4]  As noted by the California Court of Appeal, additional testimony established that
    petitioner's nickname was "Bud."

This claim was presented to the state courts in petitioner's applications for a writ of habeas corpus filed in the California Court of Appeal and California Supreme Court. Both of these petitions were summarily denied. Accordingly, this court will independently review the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado*, 223 F.3d at 982.

The United States Supreme Court has held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See also Youngblood v. West Virginia*, 547 U.S. 867, 869 (2006) ("A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused"). The duty to disclose such evidence is applicable even though there has been no request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). There are three components of a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). *See also Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Silva v. Brown*, 416 F.3d 980, 985 (9th Cir. 2005).

In order to establish prejudice, petitioner must demonstrate that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler*, 527 U.S. at 289. "The question is not whether petitioner would more likely than not have received a different verdict with the evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). *See also Silva*, 416 F.3d at 986 ("a *Brady* violation is established where there 'the favorable evidence could

1   reasonably be taken to put the whole case in such a different light as to undermine confidence in

2   the verdict.'")  Once the materiality of the suppressed evidence is established, no further

3   harmless error analysis is required.  *Kyles*, 514 U.S. at 435-36; *Silva*, 416 F.3d at 986.

4        Petitioner is not entitled to relief on these claims.  First, there is no evidence that a

5   detailed printout of Douglas' phone records during the relevant period would have provided any

6   evidence favorable to the defense.  Petitioner's unsupported speculation to the contrary is

7   insufficient to establish prejudice.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995); *James*

8   *v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).  Second, Mr. Marquette testified at petitioner's trial that

9   he, his son, and a neighbor called the Douglas residence during the time of petitioner's arrest and

10  asked for "Bud," in an attempt to locate Marquette's wife.  The jury was therefore alerted to the

11  possibility that a fair number of these calls could have come from Mr. Marquette for an innocent

12  purpose.  Assuming arguendo that telephone records would have confirmed Marquette's

13  testimony, cumulative evidence of these calls would not have had a substantial affect on the

14  verdict.[5]

15       Finally, although Officer Hunt testified that he answered several phone calls at the

16  Douglas residence from people asking for "Bud," he confirmed that he did not mention this in

17  his report.  RT at 324, 327-28.  Through this testimony, the jury was made aware that Officer

18  Hunt's police report did not confirm his trial testimony.  Under these circumstances, the

19  prosecutor's failure, if any, to clarify that some of the police reports did not mention the

20  incoming telephone

21  ////

22  ───────────────

23       [5]  The prosecutor attempted to impeach Mr. Marquette's testimony by getting him to estimate that most of his phone calls took place prior to the arrival of the arresting police officers.  RT at 331-35.  Petitioner faults the prosecutor and his trial counsel for failing to

24  introduce Marquette's phone records, which suggest that the calls were made during the time the police were at the Douglas residence.  This court concludes that any misconduct is harmless.

25  Police officers testified that they received more calls asking for "Bud" than the total number of calls estimated by Mr. Marquette.  Further, the confusing and conflicting evidence of the phone

26  calls constituted a relatively minor part of the evidence against petitioner.

1    calls to the Douglas residence did not "put the whole case in such a different light as to

2    undermine confidence in the verdict." *Silva*, 416 F.3d at 986.[6]

3         In sum, petitioner has failed to show that the prosecutor failed to disclose evidence that

4    was favorable to the defense, or that any error in this regard resulted in prejudice.  Accordingly,

5    petitioner is not entitled to relief on these claims.

6                              **b.  Knowing Use of False Testimony**

7         Petitioner claims that the prosecutor knowingly presented false testimony and false

8    evidence, and otherwise committed prosecutorial misconduct.  Pet. at 122-58; Traverse at 65-

9    152.  Petitioner's claims comprise well over 100 pages of handwritten allegations and are

10   somewhat difficult to decipher.  However, after setting forth the applicable legal principles, the

11   court will address each decipherable and cognizable claim below.

12                                **I.  Applicable Law**

13        A criminal defendant's due process rights are violated when a prosecutor's misconduct

14   renders a trial fundamentally unfair.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

15   However, such misconduct does not, per se, violate a petitioner's constitutional rights.  *Blodgett*,

16   5 F.3d 1180, 1191 (9th Cir. 1993) (citing *Darden*, 477 U.S. at 181, and *Campbell v. Kincheloe*,

17   829 F.2d 1453, 1457 (9th Cir. 1987)).  Claims of prosecutorial misconduct are reviewed "'on the

18   merits, examining the entire proceedings to determine whether the prosecutor's [actions] so

19   infected the trial with unfairness as to make the resulting conviction a denial of due process.'"

20   *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).  *See also Greer v. Miller*,

21   483 U.S. 756, 765 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Turner v*

22   *Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  Relief on such claims is limited to cases in which

23   the petitioner can establish that prosecutorial misconduct resulted in actual prejudice.  *Johnson*,

24   63 F.3d at 930 (citing *Brecht*, 507 U.S. at 637-38); *see also Darden*, 477 U.S. at 181-83; *Turner*,

25
─────────────────
26        [6]  Officer Ortiz apparently noted in his report that Officer Hunt had "picked up the phone
     several times."  RT at 328.

281 F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict.  *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).  Finally, it is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990).

It is clearly established that "a conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict."  *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985).  *See also Morales v. Woodford*, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due process requirement voids a conviction where the false evidence is 'known to be such by representatives of the State.'") (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)).  This rule applies even where the false testimony goes only to the credibility of the witness.  *Napue*, 360 U.S. at 269; *Mancuso v Olivarez*, 292 F. 3d 939, 957 (9th Cir. 2002).  There are three components to establishing a claim for relief based on the prosecutor's introduction of perjured testimony at trial.  Specifically, the petitioner must establish that: (1) the testimony or evidence was actually false; (2) the prosecutor knew or should have known that the testimony or evidence was actually false; and (3) the false testimony or evidence was material.  *Hein v. Sullivan*, 601 F.3d 897, 908 (9th Cir. 2010).  Mere speculation regarding these factors is insufficient to meet petitioner's burden.  *United States v. Aichele*, 941 F.2d 761, 766 (9th Cir. 1991).

### ii.  <u>Sheila Williams and Officer Screeton</u>

The trial testimony regarding the involvement of Sheila Williams in the events surrounding petitioner's arrest was summarized by the California Court of Appeal as follows:

> As the officers searched the premises, three individuals arrived at the residence.  One of the arrivals, upon entering the house, possessed a bag containing methamphetamine residue.  She admitted purchasing the methamphetamine from defendant earlier that day and that she had returned to purchase more.  She identified defendant as "Bud."

Opinion at 3.  Petitioner directs the court's attention to a portion of Ms. Williams' testimony wherein she stated she was not present at the Douglas residence after petitioner's arrest when "persons were digging in the back yard."  Pet. at 122; RT at 115.  However, another prosecution witness, Officer Screeton, testified that after petitioner's arrest he saw Sheila Williams and she made a statement "with regard to digging in the back yard" at the Douglas residence.  Pet. at 122-23; RT at 148-49.  Petitioner argues this evidence unfairly implied that he had buried drugs in the back yard of the Douglas residence.  He notes that his 1997 arrest involved similar allegations that he had buried drugs and cash behind his motel room.

Sheila Williams also testified that at the time of petitioner's arrest Officer Screeton threatened to take her children away if she didn't answer his questions; Officer Screeton denied making this threat.  Pet. at 124; RT at 121, 148.  Petitioner alleges that "one of the prosecution's witnesses is lying."  Pet. at 123.  Petitioner faults the prosecutor and his trial counsel for failing to "sort out which witness was lying."  *Id.*  Petitioner also notes the prosecutor stated during her closing argument that Sheila Williams' testimony that Officer Screeton threatened to take her children was "absolutely false."  Pet. at 125; RT at 360.  He believes this provides evidence that the prosecution used knowingly false testimony at his trial.

The prosecutor's statement during closing argument that Sheila Williams' accusation against Officer Screeton was false in no way supports petitioner's claim that the prosecution knowingly relied on false testimony.  To the contrary, the prosecutor went to some length to point out and reject the falsity of that claim.  But this does not mean that the details of William's testimony that related to petitioners conduct was false.  Indeed, as discussed, those details had independent corroboration.  There is no support for petitioner's claim that the prosecutor presented perjured testimony.

Petitioner points out other relatively minor discrepancies between the testimony of Sheila Williams and other parts of the trial record, such as whether Williams went to the Douglas residence to pay for drugs she had already purchased, or whether she went there to pay for

1   additional drugs.  *See* Pet. at 125-26.  Petitioner also points to evidence that, in his view, casts

2   doubt on the testimony of Sheila Williams and Officer Screeton.  *Id.* at 126-29, 130.  For

3   instance, petitioner attaches letters written by Sheila Williams to petitioner, in which Williams

4   states that Officer Screeton threatened to take her children if she didn't cooperate.  Pet. at 131-33

5   & Ex. B.  The letters also indicate that Sheila Williams came to the Douglas residence to get

6   some oriental rugs from petitioner, and not to purchase drugs.  Although Ms. Williams denied on

7   the witness stand that her assertion about the rugs was true, petitioner faults the prosecutor, and

8   his trial counsel, for failing to place those letters before the jury.  Traverse at 127, 129.

9   Petitioner also faults his trial counsel for failing to ensure that the jury knew Sheila Williams had

10  been convicted of a misdemeanor.  *Id.* at 133.

11         Petitioner has failed to demonstrate prejudice with respect to these claims.  The main

12  thrust of Ms. Williams' testimony was that she had purchased methamphetamine from petitioner

13  on the day of his arrest and that she came to the Douglas residence while his arrest was ongoing

14  to purchase additional methamphetamine.  Conflicting or confusing testimony about the

15  collateral issue of whether Williams saw people digging in Douglas's back yard would not have

16  had a substantial or injurious effect on the verdict, especially since no buried drugs were found at

17  the Douglas residence or during petitioner's arrest in 1997.

18         Sheila Williams testified on cross-examination that she had been convicted of a felony

19  and that she had "done all [her] time on everything."  RT at 116, 122.  In light of this testimony,

20  the failure of the prosecutor or petitioner's counsel to provide evidence of Williams'

21  misdemeanor convictions, if any, was harmless.  Williams also testified on cross-examination

22  that Officer Screeton threatened to take away her children if she didn't cooperate with him.  *Id.*

23  at 121.  The jury was therefore able to judge her credibility and determine whether her testimony

24  was based on these threats, if any, or was truthful.  The fact that Officer Screeton denied making

25  this threat, therefore contradicting the testimony of Williams on this point, could not have had a

26  significant effect on the verdict.

Williams testified that when she was in jail, petitioner wrote her letters in which he suggested to her that the reason she went to the Douglas residence on the date of petitioner's arrest was to purchase an oriental rug. *Id.* at 115. However, she testified at petitioner's trial that this was not true, and that she was "scared." *Id.* at 114, 115. The letters, in which she stated that she came to the residence to purchase a rug, were discussed during petitioner's trial but were apparently not introduced into evidence or read to the jury. Petitioner believes this situation evidences a conspiracy between his counsel and the prosecutor to withhold information that cast doubt on the credibility of Williams' testimony that she came to the Douglas residence to purchase drugs from petitioner.

Sheila Williams testified at trial that she purchased methamphetamine from petitioner at the Douglas residence, and denied that she came to the residence to purchase a rug. She also testified that petitioner told her to testify to "a different purpose for being at that house on March 2nd than what the true purpose of what you were there on March 2nd for;" specifically, "for oriental rug." *Id.* at 115. At a later point in her testimony, however, Williams denied that her letters mentioning the rug were written after petitioner wrote to her suggesting that this was her motive for coming to the Douglas residence. *Id.* at 122. Petitioner argues this undercuts the prosecutor's theory that petitioner tried to influence Williams' testimony. In light of the fairly comprehensive discussion of these letters at petitioner's trial, admission into evidence of the actual letters would not have had a significant impact on Williams' testimony that she came to the Douglas residence to purchase methamphetamine. Accordingly, no person committed prejudicial error in failing to ensure that the letters were admitted into evidence.

For the foregoing reasons, petitioner is not entitled to relief on his claim that the prosecutor committed misconduct in connection with the trial testimony of Sheila Williams.

### iii.  William Marquette and Investigator Troy Kenney

Petitioner argues that defense witness William Marquette was "secretly 'turned' as a state's witness" and that prosecution investigator Troy Kenney gave false and misleading

1  testimony on the witness stand, which was "elicited by the prosecution." Pet. at 134. Petitioner

2  first notes that the trial court ruled the testimony of Mr. Marquette would be limited to the

3  subject of his telephone calls to the Douglas residence, described above. *Id.* at 134; RT at 300.

4  Petitioner argues that the prosecutor violated this ruling and acted in bad faith during the cross-

5  examination of Mr. Marquette when she unfairly tried to pin Marquette down on the exact timing

6  and number of phone calls made to the Douglas residence, and got him to agree that he made his

7  calls prior to the time that arresting officers Hunt and Screeton arrived at the residence. Pet. at

8  41;138-40.

9       Petitioner states that telephone records would have confirmed Marquette called the

10  residence while Officers Hunt and Screeton were there, contrary to Marquette's estimate on the

11  witness stand that placed his calls prior to the time the officers arrived. Petitioner states that

12  Marquette's testimony regarding the timing and number of phone calls to the Douglas residence

13  changed between the time petitioner talked to him prior to trial and the date of his testimony. *Id.*

14  at 148. Petitioner questions why Marquette had a clearer memory of the timing of the telephone

15  calls prior to trial, but had "a convenient memory laps[e]" at the time of his testimony. *Id.* at

16  141; Traverse at 94. He states, "it was obvious that something was going on when his testimony

17  changed." Pet. at 148. Petitioner questions whether Mr. Marquette was "offered something for

18  his testimony." Traverse at 102. Petitioner also objects to the prosecutor's "bad faith" in asking

19  Mr. Marquette whether he was under the influence of methamphetamine while he was on the

20  witness stand, arguing that this question was "highly prejudicial" and violated the trial court's

21  ruling limiting the subject matter of Marquette's testimony to the telephone calls. *Id.* at 70-71.

22       Petitioner also points out differences between the report written by prosecution

23  investigator Kenney about his interview with Mr. Marquette concerning Marquette's telephone

24  calls to the Douglas residence, Pet., Ex. D, and Marquette's trial testimony, in an attempt to

25  demonstrate that Kenney's report was inaccurate and Marquette's testimony about the timing of

26  the telephone calls was either false or manipulated by the prosecutor. Pet. at 142-50; Traverse at

65.  Petitioner argues that Kenney's report was "patently crafted/creatively written, designed to

mis-lead, and to make [William Marquette] out to be a liar."  Traverse at 65.  Petitioner appears,

in part, to be challenging that portion of the report which characterizes the Douglas residence as

"Bud and Mike's house," when it was not petitioner's residence at all.  *Id.* at 65-67.  Petitioner

summarizes this part of his argument as follows:

> 1.)  Troy Kenney interviews the subject a William Marquette; 2.)
> Troy Kenney does not record the interview; 3) the subject William
> Marquette does not see the report; 4.)  the subject Marquette
> assumes the report will reflect his answers correctly; 5.) Marquette
> never sees or reads the report; 6.) Marquette does not sign the
> report under the penalty of perjury; 7.) Marquette's answers are
> altered to help the People's Theory; 8.)  Marquette then is made
> out to be a liar; 9.) D.A. investigator Troy Kenney is called as a
> prosecution rebuttal witness, and restates the altered answers under
> oath.

Traverse at 65-66.  Petitioner alleges that the prosecutor and Mr. Kenney had a "patently [sic]

crafted scheme" to manipulate the facts to make it appear that petitioner was selling narcotics

from Douglas's home, with part of that scheme being false testimony that numerous people

called the Douglas residence asking for petitioner.  *Id.* at 68.  Petitioner argues that the

prosecutor manipulated the testimony of investigator Kenney to make it appear as though

petitioner lived at and sold drugs from the Douglas home, when that was not true.  Pet. at 146-

47.

Petitioner has failed to demonstrate prejudice with respect to these claims.  First, Mr.

Marquette testified on cross-examination that he was not certain of the time of his calls because

it had been six months since the calls were placed.  RT at 341.  Even assuming that some of the

calls to the Douglas residence were from Mr. Marquette, petitioner has failed to show that these

were the only calls made to the residence.  The officers testified that they fielded at least six calls

asking for "Bud."  Mr. Marquette testified that he made approximately three or four calls.

Further, there was substantial evidence apart from the telephone calls, described by the

California Court of Appeal in its opinion, which supported the prosecutor's theory that petitioner

1    was selling narcotics from Douglas's residence.  Under the circumstances of this case, the

2    prosecutor's questions about the timing of the Marquette calls could not have had a substantial

3    and injurious effect or influence on the verdict.  There is also no evidence that Mr. Kenney and

4    the prosecutor, or any other person, were involved in a conspiracy to introduce false testimony.

5         This court also concludes that it was not misconduct for the prosecutor to ask Mr.

6    Marquette whether he was under the influence of methamphetamine at the time of his testimony.

7    Mr. Marquette denied that he was under the influence and there was no further evidence on this

8    subject.  Even assuming this question was improper, it was harmless.

9                          **iv.  Officers Hunt and Screeton**

10        Petitioner claims Officers Hunt and Screeton testified falsely that during petitioner's

11   arrest they received numerous phone calls from people asking for "Bud," and stating they wanted

12   to pick up something.  Pet. at 135-37.  He believes all of these calls were from Mr. Marquette,

13   Marquette's son, or his neighbor.  As described above, petitioner notes that the police reports

14   written by these officers did not mention the telephone calls.

15        Petitioner has failed to demonstrate that the officers' testimony was false or that the

16   prosecutor knew it was false.  Further, even assuming *arguendo* most of the calls were from Mr.

17   Marquette, Marquette testified that he asked for "Bud" each time he called, thereby supporting

18   the officers' testimony in this regard.  RT at 332.  For these reasons, petitioner is not entitled to

19   relief on this claim.

20                    **v.  Miscellaneous Claims of Prosecutorial Misconduct**

21        Petitioner challenges "the continued effort to circumstantially prove petitioner was living

22   at Douglas's."  Pet. at 149.  Petitioner points to numerous perceived discrepancies between trial

23   testimony, police reports, petitioner's personal knowledge, and other sources of information in

24   an attempt to show that all of the testimony tending to show he was residing and selling drugs

25   from the Douglas residence was untrue.  Petitioner faults his trial counsel and the prosecutor for

26   failing to introduce evidence showing that petitioner actually lived in Del Paso Heights with his

1  girlfriend. *Id.* at 149-50. Indeed, petitioner challenges nearly every question asked of the

2  relevant witnesses and nearly every ruling made by the trial judge. Many of petitioner's claims

3  fail to pinpoint any testimony that was actually false. Rather, the claims question the

4  believability of some of the testimony, challenge the trial court for allowing the introduction of

5  certain evidence, or complain about the performance of petitioner's trial counsel. Petitioner also

6  attempts to explain why some of the damaging trial evidence actually had an innocent

7  explanation. Traverse at 145-50.

8      Petitioner makes several other miscellaneous arguments about the testimony of trial

9  witnesses and/or evidence. For instance, he highlights differences between the testimony of

10 various witnesses as to whether the vehicle of one of the persons who came to the Douglas

11 residence during petitioner's arrest (Mr. Greenfield) was parked in front of Douglas's house or in

12 the back of the house. Pet. at 150-52. He argues that the prosecutor was trying to make it appear

13 this person was "sneaking up to the residence to make sure the coast was clear." *Id.* at 151.

14 Petitioner challenges the testimony of Officer Ortiz to the effect that petitioner admitted

15 ownership of several boxes found in the Douglas residence. *Id.* at 152-53. Petitioner claims

16 Ortiz was "confused as to Petitioner and Douglas's identity." *Id.* at 153. Petitioner claims that

17 testimony about the search of the Douglas residence for narcotics did not make logical sense in

18 several respects and was therefore "so suspect and ridiculous . . . to put it to a jury would be

19 insulting their intelligence." *Id.* at 154-58. Petitioner claims that Officer Jeter testified falsely

20 that the police officers announced their presence when he was arrested in 1997 and waited a

21 period of time before entering the residence, when in fact they rammed the door and rushed in,

22 knocking one of the inhabitants to the ground. Traverse at 116. Petitioner has failed to establish

23 that any of this testimony was actually false or that the prosecutor knew it was false. He has also

24 failed to establish prejudice with respect to any of these claims.

25      After a review of the record, this court concludes that petitioner has failed to demonstrate

26 the prosecutor elicited knowingly false testimony or that she committed prosecutorial

misconduct in any other respect.  Petitioner has also failed to demonstrate that any alleged

misconduct by the prosecutor had a substantial and injurious effect or influence in determining

the jury's verdict.  He has also failed to establish that any allegedly false testimony would have

effected the verdict in this case.  Accordingly, petitioner is not entitled to relief on these claims.[7]

### 4. __Conviction of Both a Greater and a Lesser Included Offense for the Same Crime__

Petitioner claims that his "conviction of possession of more than an ounce of marijuana

in count five was barred as a lesser included offense of the possession for sale of marijuana in

count three."  Pet. at 159.  Petitioner notes that the prosecutor agreed both counts involved the

same quantity of marijuana, and he argues that "both conviction based on the same quantity of

marijuana is a unreasonable application of State and Federal Law."  *Id.* at 161.  Petitioner also

argues that the trial court erred in refusing to instruct the jury that Count Five was a lesser

included offense of Count Three.  *Id.*  The California Court of Appeal rejected these arguments,

reasoning as follows:

> Defendant argues his conviction for possession of more than 28.5 grams of marijuana (count five) is precluded as a lesser included offense of his conviction for possession of marijuana for sale (count three).  The trial court concluded the charges in question were based on the same quantity of marijuana but declined an instruction that count five was a lesser included offense of count three.  The court concluded defendant could be convicted of both offenses, but sentencing on both was barred by Penal Code section 654.

> The jury convicted defendant of both possession for sale and possession of marijuana in counts three and five.  The court sentenced defendant to a consecutive sentence of 25 years to life for count three and a concurrent term of six months for count five.

////

_____

[7]  The traverse also contains several allegations that are not contained in the petition. These allegations will not be specifically addressed by the court.  <u>See</u> *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise additional grounds for relief).

26

Defendant argues this sentence was improper since possession of more than an ounce of marijuana is a lesser included offense of possession for sale.  Defendant misconstrues the facts in this case.

"The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense."  (*People v. Ortega* (1998) 19 Cal.4th 686, 692, 80 Cal.Rptr.2d 489, 968 P.2d 48.)  Here, the jury convicted defendant of possession of marijuana for sale and possession of more than 28.5 grams of marijuana.  Unlike the crime of possession of more than 28.5 grams of marijuana, the crime of possession of marijuana for sale can be established by possession of less than 28.5 grams of marijuana.  Therefore, since the crime of possession of marijuana for sale may be committed without necessarily committing the crime of possession of more than 28.5 grams of marijuana, the latter is not a lesser included offense of the former.[8]

However, although we find the convictions for possession of more than 28.5 grams of marijuana and possession of marijuana for sale appropriate, we find Penal Code section 654 prohibits concurrent sentences for both convictions.  Penal Code section 654 states, in part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Here, the police search uncovered two bags of marijuana containing a total of approximately 125 grams.  The court sentenced defendant to a consecutive term of 25 years to life for possession of marijuana for sale and a concurrent term of six months for possession of the same 28.5 grams of marijuana.  Under Penal Code section 654, the latter term should be stayed.

Opinion at 9-11.

////

_____

[8]  Defendant argues the prosecution conceded defendant's convictions on counts three and five were based upon possession of the same quantity of marijuana and therefore convictions on both counts were prohibited.  Defendant relies on *People v. Saldana* (1984) 157 Cal.App.3d 443, 453-458, 204 Cal.Rptr. 465 (*Saldana*).  In *Saldana*, the defendant was charged with possession of heroin for sale (Health & Saf.Code, § 11351), and the court failed to instruct on the lesser included offense of simple possession of heroin.  The appellate court reversed, finding a lesser included instruction warranted where the charged offense cannot be committed without necessarily committing another offense.  (*Saldana, supra*, 157 Cal.App.3d at p. 454, 204 Cal.Rptr. 465.)  As discussed above, that is not true in the present case.

27

1   Petitioner's claims regarding his conviction on Counts Five and Three were denied by the

2   California Court of Appeal on state law grounds in a thorough and reasoned opinion.  The state

3   court's decision that petitioner's conviction on both counts did not violate state law or the state

4   constitution, derived from its analysis of state law, is binding on this court.  *See Lewis v. Jeffers*,

5   497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law

6   . . . .").  *See also Rivera v. Illinois*, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error

7   of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21

8   (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Waddington v. Sarausad*, ___

9   U.S. ___, 129 S.Ct. 823, 832 n.5 (2009) ("we have repeatedly held that 'it is not the province of

10   a federal habeas court to reexamine state-court determinations on state-law questions");

11   *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) "a state court's interpretation of state law . . . binds

12   a federal court sitting in federal habeas").

13   Petitioner has also failed to demonstrate that his conviction on these counts violated

14   federal law or that the state court's decision was contrary to or an unreasonable application of

15   United States Supreme Court authority.  There is no evidence that petitioner's sentence or his

16   conviction on Counts Three and Five were violative of his right to due process or any other

17   federal constitutional right.[9]

18   ////

19

20   [9]  To the extent petitioner is challenging his sentence, his claim should be denied.
Habeas corpus relief is unavailable for alleged errors in the interpretation or application of state
sentencing laws by either a state trial court or appellate court.  "State courts are the ultimate

21   expositors of state law," and a federal habeas court is bound by the state's construction except
when it appears that its interpretation is an obvious subterfuge to evade the consideration of a

22   federal issue.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  So long as a state sentence "is not
based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

23   motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of
state concern."  *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  Petitioner has

24   failed to demonstrate that the decision of the California Court of Appeal rejecting this claim is a
subterfuge to evade consideration of a federal issue, or that his sentence is based on improper

25   grounds.  Accordingly, he is not entitled to habeas corpus relief on any such claim.  *See Souch v.
Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (petitioner's sentencing claims insufficient to merit

26   federal habeas relief).

1    Petitioner's argument that the trial court violated his right to due process by failing to

2 instruct the jury that Count Five was a lesser included offense of Count Three is also unavailing.

3 In light of the decision by the California Court of Appeal, it appears that such an instruction

4 would not have been correct under California law.  Accordingly, the trial court did not err in

5 failing to so instruct the jury.

6    **5.  Ineffective Assistance of Trial and Appellate Counsel**

7    Petitioner claims that he received constitutionally ineffective assistance of trial and

8 appellate counsel through numerous errors of counsel.  Petitioner's claims, as set forth in the

9 petition and traverse, are described in more than one hundred fifty pages of handwritten text and

10 contain multiple repetitions and commingling of allegations.  The court has attempted to

11 summarize petitioner's allegations into principal categories, as described below.

12    Petitioner's claims in this regard were summarily denied on the merits by the California

13 Court of Appeal and Supreme Court.  Under these circumstances, this court must independently

14 review the record to determine whether habeas corpus relief is available under section 2254(d).

15 *Delgado*, 223 F.3d at 982.

16    **a.  Applicable Legal Principles**

17    The Sixth Amendment guarantees the effective assistance of counsel.  The United States

18 Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

19 *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

20 petitioner must first show that, considering all the circumstances, counsel's performance fell

21 below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at  687-88.  After a

22 petitioner identifies the acts or omissions that are alleged not to have been the result of

23 reasonable professional judgment, the court must determine whether, in light of all the

24 circumstances, the identified acts or omissions were outside the wide range of professionally

25 competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a

26 petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*,

466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. *See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed." *Id*.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." *Id*. *See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and

is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

meritless arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a

showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

to raise a weak issue.  *See Miller*, 882 F.2d at 1434.  In order to establish prejudice in this

context, petitioner must demonstrate that, but for counsel's errors, he probably would have

prevailed on appeal.  *Id*. at 1434 n.9.

### b.  Petitioner's Claims

#### I.  Counsel's Failure to Provide Petitioner with Discovery and Keep him Informed

Petitioner claims that his trial counsel failed to provide him with discovery and other

relevant documents during and prior to his trial, only sending them to petitioner after he had

been convicted.  Pet. at 1.  He also complains that his trial counsel did not "make himself

available."  *Id.*

Petitioner has failed to demonstrate prejudice with respect to these claims.  Assuming

*arguendo* that petitioner's trial counsel failed to communicate with petitioner as much as he

would have liked, and/or failed to provide petitioner with discovery in a timely manner, there is

no evidence here that counsel's failure to do so affected the outcome of the trial.  Accordingly,

petitioner is not entitled to relief on these claims.

#### ii.  Counsel's Failure to Introduce Evidence regarding Douglas' Prior Criminal History

Petitioner claims that his trial counsel rendered ineffective assistance in failing to ensure

that the jury was aware of Douglas' prior criminal history.  Pet. at 2-8.  Petitioner believes this

evidence would have deflected suspicion from him.  *Id.*

Petitioner has failed to demonstrate deficient performance or prejudice with respect to

this claim.  Counsel's apparent decision not to belabor the fact that petitioner was residing with

someone with an extensive history of drug convictions was a reasonable tactical decision.  *See*

31

1  *Strickland*, 466 U.S. at 690 ("strategic choices made after thorough investigation of law and facts

2  relevant to plausible options are virtually unchallengeable").  In addition, petitioner has failed to

3  show that the jury's receipt of this information would have resulted in a different outcome at

4  trial.  Accordingly, petitioner is not entitled to relief on this claim.

5  ### iii.  **Trial Witnesses**

6  Throughout the petition and traverse, petitioner presents the following claims regarding

7  trial counsel's alleged shortcomings in connection with evidence presented through trial

8  witnesses: (1) trial counsel rendered ineffective assistance in failing to introduce evidence,

9  including the testimony of a "drug expert," showing that the facts of petitioner's 1997 conviction

10  were too dissimilar to the instant matter to be relevant on the issue of petitioner's intent; a

11  handwriting expert to compare the "pay-owe" sheets from petitioner's 1997 arrest with those in

12  the pending case; and a "fingerprint expert" to demonstrate that petitioner never touched the

13  evidence uncovered from Douglas' residence; (2) trial counsel improperly failed to prevent the

14  prosecutor from calling Detective Sherlock as an expert witness on sales of narcotics, and failed

15  to prevent Sherlock from observing the other witnesses' testimony before being called; (3)

16  petitioner objects to the testimony of Detective Sherlock on the grounds that it was not correct,

17  and he faults his trial counsel for failing to challenge the testimony on this ground; (4) trial

18  counsel should have clarified that Beverly Chapman saw people digging holes in Douglas' back

19  yard only after petitioner had been arrested, to prevent an inference that petitioner buried drugs

20  in Douglas' yard; (5) trial counsel should have clarified that Detective Ortiz confused petitioner

21  for Douglas when he testified that petitioner claimed ownership of certain items of evidence

22  found in Douglas' residence; (6) trial counsel improperly failed to prevent the admission of

23  evidence that police officers answered telephone calls at the Douglas residence, especially given

24  the fact that these calls were not mentioned in the police reports; (7) trial counsel failed to

25  question Officers Hunt and Screeton as to why they did not mention in their reports that they

26  answered the telephone at the Douglas residence; (8) trial counsel refused to call witnesses

suggested by petitioner; (9) trial counsel failed to prevent the prosecutor from violating the court

order limiting the scope of Mr. Marquette's testimony to his telephone calls to the Douglas

residence; (10) trial counsel failed to prevent the prosecutor from asking Mr. Marquette whether

he was under the influence of methamphetamine; (11) trial counsel failed to object when the

prosecutor asked Mr. Marquette whether his wife went to the Douglas residence to pick up

methamphetamine, when he had previously testified she went there to pick up two of her friends;

(12) trial counsel failed to "curtail the prosecutor consistent attacks in bad-faith to make

Marquette out to be a liar;" (13) trial counsel "work[ed] in concert" with the prosecutor to

manipulate Marquette's testimony about the timing of his telephone calls to the Douglas

residence, to make it appear he was not telling the truth about having made the calls; (14) trial

counsel failed to correct Marquette's testimony that his cellphone was "going dead" when, in

fact, he received 44 phone calls on the phone; (15) trial counsel failed to counteract or put into

context testimony that a pager in the Douglas residence was constantly going off; (16) trial

counsel failed to prevent the prosecutor from refreshing Sheila Williams' recollection with a

police report; (17) trial counsel failed to challenge the testimony of any witness that was

inconsistent in any way with the testimony of another witness; (18) trial counsel failed to recall

Sheila Williams to the witness stand when he had earlier informed the court that he intended to

do so; (19) trial counsel should have clarified that Mr. Greenfield was actually parked in front of

the Douglas residence when the police arrived, and not behind the residence, to rebut any

inference that Greenfield did not want to be seen; (20) trial counsel failed to rebut the erroneous

inference that one of the persons who came to the Douglas residence was also listed on a pay-

owe sheet from petitioner's 1997 arrest; (21) trial counsel failed to object to the testimony of

Officer Ortiz that petitioner had a "bed roll" at the Douglas residence, thereby implying that

petitioner lived there, when it was just a regular blanket; (22) trial counsel improperly impeached

the testimony of his own witness, Mr. Marquette, when he appeared to question the truth of

Marquette's testimony that money in the possession of his wife when she was arrested came

1   from lotto winnings; (23) trial counsel failed to impeach improbable evidence from various

2   police officers that they heard furniture being dragged across the room after they announced their

3   presence; and (24) trial counsel failed to cross-examine Officer Nowicki's testimony that

4   petitioner refused to submit to a urine test, in order to clarify that he refused to submit to any

5   tests at all because the officer had been "rude and demanding."

6        Petitioner is not entitled to relief on these claims.  With regard to his claims that his trial

7   counsel failed to call certain witnesses, including a "drug expert," petitioner has failed to

8   demonstrate that any such witness would have agreed to testify, or would have provided

9   testimony helpful to the defense.  *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (no

10  ineffective assistance where petitioner did "nothing more than speculate that, if interviewed," a

11  witness might have given helpful information); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000)

12  (no ineffective assistance of counsel where there was no evidence in the record that a helpful

13  witness actually existed and petitioner failed to present an affidavit establishing that the alleged

14  witness would have provided helpful testimony for the defense); *United States v. Harden*, 846

15  F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call

16  a witness where, among other things, there was no evidence in the record that the witness would

17  testify); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet

18  prejudice prong of ineffective assistance claim because he offered no indication of what potential

19  witnesses would have testified to or how their testimony might have changed the outcome of the

20  hearing).

21       With regard to petitioner's numerous claims that his trial counsel failed to prevent the

22  prosecutor from asking certain questions, or from calling certain witnesses, he has failed to

23  demonstrate that any such challenge would have been successful.  The same is true of

24  petitioner's claims that his trial attorney should have clarified some of the testimony of the trial

25  witnesses in order to prevent any negative inferences.  An attorney's failure to make a meritless

26  objection or motion does not constitute ineffective assistance of counsel.  *See Matylinsky v.*

1   *Budge*, 577 F.3d 1083, 1094 (9th Cir. 2009), *cert. denied*, 130 S.Ct. 1154 (2010) (counsel's

2   failure to object to testimony on hearsay grounds not ineffective where objection would have

3   been properly overruled); *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v.*

4   *Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985)); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996)

5   ("the failure to take a futile action can never be deficient performance").

6       The court notes that much of the evidence challenged by petitioner, such as the telephone

7   calls to the Douglas residence, were thoroughly explored by his trial counsel on direct or cross-

8   examination.  The fact that the jury did not credit petitioner's version of the events does not

9   mean that his trial counsel rendered ineffective assistance.  Some of the prosecutor's challenged

10  questions were clearly proper subjects for cross-examination and could not have been

11  successfully challenged by defense counsel.  Trial counsel argued vigorously against the

12  admission of evidence regarding  petitioner's 1997 arrest.  Finally, some of counsel's actions

13  appear to have been the result of reasonable tactical decisions, such as his decision not to recall

14  Sheila Williams to the witness stand, his decision not to challenge every small inconsistency in

15  the testimony of the trial witnesses, and his decision not to highlight negative topics for the jury

16  by focusing on them in cross-examination.  *See e.g.*, RT at 322, 323.

17      The *Strickland* standard "places the burden on the defendant, not the State, to show a

18  'reasonable probability' that the result would have been different."  *Wong v. Belmontes*, ___ U.S.

19  ___, 130 S. Ct. 383, 390-391 (2009) (quoting *Strickland*, 466 U.S. at 694).  Petitioner has failed

20  to meet that burden with respect to these claims of ineffective assistance of counsel.

21                      **iv.  <u>Other Claims</u>**

22      Petitioner makes other miscellaneous claims of ineffective assistance of trial counsel

23  throughout the petition and traverse.  Specifically, he claims that: (1) trial counsel should have

24  conducted further investigation into the digging of holes in Douglas' back yard, to show that

25  petitioner was not involved in this; (2) counsel failed to ensure that Mr. Marquette was present in

26  the courthouse when he was called as a witness, because his absence made him look like a

1    "flake;" (3) trial counsel failed to provide evidence that the telephone in the Douglas residence

2    was only registered to Douglas; (4) trial counsel improperly allowed the trial court to instruct the

3    jury on conspiracy; (5) counsel failed to tell the jury that the prosecutor made a deal with

4    Marquette's wife in exchange for Marquette's favorable testimony; (6) counsel failed to

5    introduce phone records clarifying when Marquette made his telephone calls to the Douglas

6    residence; (7) counsel failed to introduce into evidence the letters between petitioner and Sheila

7    Williams because they would have demonstrated that petitioner did not tell Williams to testify

8    falsely that she came to the Douglas residence to pick up an oriental rug; (8) trial counsel

9    "secretly withdrew" the above-described letters from evidence and failed to ensure that they

10   were read by the jury; (9) counsel failed to fully investigate the prior criminal history of Ms.

11   Williams and to inform the jury of Williams' prior misdemeanor convictions; (10) counsel failed

12   to provide proof that petitioner resided in Del Paso Heights with his girlfriend; (11) counsel

13   failed to prevent the use of petitioner's prison identification card as evidence; (12) counsel failed

14   to introduce evidence that petitioner did not have a key to the Douglas residence; and (13)

15   counsel failed to investigate the Street Crimes Action Committee because much of the evidence

16   and testimony "that defies reason" appears to be somehow connected with this committee.

17       Petitioner has failed to demonstrate prejudice with respect to these claims. Petitioner's

18   claims that the prosecutor made a deal with Mr. Marquette's wife in exchange for Marquette's

19   testimony, that his trial counsel "secretly withdrew" certain items of evidence, and that the Street

20   Crimes Action Committee has a connection with false testimony at petitioner's trial are based on

21   mere speculation. Several subjects identified by petitioner in these claims were explored at

22   petitioner's trial, such as the fact that he may have lived with his girlfriend in Del Paso Heights,

23   the digging of holes in Douglas' back yard, and the content of the letters between petitioner and

24   Sheila Williams. Petitioner specifically states his trial counsel interviewed petitioner's girlfriend

25   but decided, for tactical reasons, not to call her as a witness. Traverse at 80. This decision was

26   not unreasonable and does not constitute ineffective assistance. Clarification of other matters for

36

the jury would not have had any impact on the verdict, such as whether petitioner had a key to the Douglas residence, whether Mr. Marquette was not present in the courthouse when he was first called as a witness, and whether Douglas' telephone was registered to Douglas alone.  In no claim has petitioner established that he was prejudiced by any deficient actions by his trial counsel.  Accordingly, petitioner is not entitled to relief on these claims.[10]

### v.   **Appellate Counsel**

Petitioner claims his appellate counsel rendered ineffective assistance by failing to raise on appeal all meritorious issues contained in the petition.  He explains that "this Ground incompasses [sic] all naturally relevant material evidence that a diligent appeals attorney would zealously present on appeal."  Pet. at 100.

As described above, this court has concluded that the claims raised by petitioner in the petition before this court lack merit.  Appellate counsel's decision to press claims with more merit than the claims suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases."  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  Indeed, counsel  originally prevailed on one of his appellate arguments.  Petitioner has also failed to demonstrate that he probably would have prevailed if his appellate counsel had raised the claims contained in the instant petition.  He has therefore failed to establish prejudice.  *See Rhoades v. Henry*, 596 F.3d 1170, 1179 (9th Cir. 2010) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere"); *Miller*, 882 F.2d at 2434 n.9.

////

////

---

[10]  In the traverse, petitioner challenges respondent's failure to obtain a declaration from petitioner's trial counsel, even though respondent's counsel informed this court that she intended to do so.  Traverse at 1,8.  Respondent's failure to file a declaration from counsel has no bearing on petitioner's claims of ineffective assistance of counsel.

**III.  Conclusion**

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:   September 14, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE